1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOE AMASON,                               No.  2:12-cv-0388 KJN P

12                 Plaintiff,

13         v.                                    ORDER

14    J. WEDELL, et al.,

15                 Defendants.

16

17    I.  Introduction

18         Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief pursuant to

19    42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

20    § 1915.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.

21    § 636(b)(1).  Plaintiff consented to proceed before the undersigned for all purposes.  See 28

22    U.S.C. § 636(c).

23         Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

24    § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

25         Plaintiff is required to pay the statutory filing fee of $350.00 for this action.

26    28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing

27    fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

28    direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

1  and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

2  payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

3  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

4  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

5  § 1915(b)(2).

6  II.  Screening Standards

7       The court is required to screen complaints brought by prisoners seeking relief against a

8  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

9  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

10  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

11  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

12       A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

13  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

14  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

15  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

16  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

17  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

18  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

19  2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

20  meritless legal theories or whose factual contentions are clearly baseless."); Murphy, 745 F.2d at

21  1227.

22       Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

23  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

24  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

25  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

26  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

27  formulaic recitation of the elements of a cause of action;" it must contain factual allegations

28  sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

1  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

2  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

3  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

4  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

5  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

6  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

7  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

8  III.  Rule 18(a) of the Federal Rules of Civil Procedure

9      Plaintiff's complaint is 24 pages long, names thirteen defendants, and is accompanied by

10  72 pages of exhibits.  (ECF No. 1.)  The screening of plaintiff's complaint was made difficult

11  because plaintiff raised myriad unrelated factual allegations against numerous defendants and

12  claimed various constitutional violations.

13      Plaintiff is advised that he may join multiple claims only if they are all against a single

14  defendant.  Fed. R. Civ. P. 18(a).  Unrelated claims against different defendants must be pursued

15  in multiple lawsuits.

16  
17  
18  
19  
20  
21  
22
> The controlling principle appears in Fed. R. Civ. P. 18(a):  'A party
> asserting a claim . . . may join, [] as independent or as alternate
> claims, as many claims . . . as the party has against an opposing
> party.'  Thus multiple claims against a single party are fine, but
> Claim A against Defendant 1 should not be joined with unrelated
> Claim B against Defendant 2.  Unrelated claims against different
> defendants belong in different suits, not only to prevent the sort of
> morass [a multiple claim, multiple defendant] suit produce[s], but
> also to ensure that prisoners pay the required filing fees-for the
> Prison Litigation Reform Act limits to 3 the number of frivolous
> suits or appeals that any prisoner may file without prepayment of
> the required fees.  28 U.S.C. § 1915(g).

23  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of

24  defendants not permitted unless both commonality and same transaction requirements are

25  satisfied).

26      While it appears that plaintiff may be able to state at least one cognizable claim, as

27  explained more fully below, he violated Rule 18(a) by including multiple unrelated claims in this

28  single filing.  Plaintiff will be given an opportunity to file an amended complaint under this case

number, wherein he is directed to plead/allege only related claims. All unrelated claims should be brought in separate suits. In addition, Eastern District Local Rule 110 provides for the imposition of any and all sanctions authorized by statute or Rule or within the inherent power of the court if a party fails to comply with the court's Local Rules or any order of the court. Moreover, Eastern District Local Rule 183(a) provides, in part:

> Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal . . . or any other sanction appropriate under these Rules.

See also King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. Aug. 29, 2012). Case law is in accord that a district court may impose sanctions, including involuntary dismissal of a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b), where that plaintiff fails to prosecute his or her case or fails to comply with the court's orders. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that a court "may act sua sponte to dismiss a suit for failure to prosecute"); Hells Canyon Preservation Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."), cert. denied, 506 U.S. 915 (1992); Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their dockets and may impose sanctions including dismissal), cert. denied, 479 U.S. 829 (1986).

Thus, plaintiff's continued violation of Rule 18(a) may result in the dismissal of some of plaintiff's claims, or the dismissal of this action based on plaintiff's failure to comply with court orders.

1  IV.  Substantive Screening

2      Plaintiff alleges numerous constitutional violations based on events that occurred while

3  plaintiff was incarcerated at California State Prison-Sacramento, from 2009 through April 28,

4  2010.  However, the bulk of plaintiff's complaint pertains to his Eighth Amendment claims,

5  including allegations that numerous defendants were deliberately indifferent to plaintiff's serious

6  medical needs.  Plaintiff allegedly suffers from cellulitis, neuropathy, leg, foot, and ankle

7  swelling and pain, a deteriorated disc problem in his back, and lower back pain, and claims his

8  back often gives out, causing plaintiff to fall.  Plaintiff has been transferred since this action was

9  filed, and is now incarcerated at Kern Valley State Prison in Delano, California.  The court

10  addresses plaintiff's claims by the date the alleged violation occurred.

11      A.  September 20-21 and October 23, 2009

12      Plaintiff's allegations concerning the events of September 20 and 21, 2009, and October

13  23, 2009, are analyzed together because some of plaintiff's factual allegations were pled in

14  connection with more than one time frame.

15          i.  September 20-21, 2009

16      On September 20, 2009, plaintiff claims he was in "so much pain" from swelling in his

17  legs and feet, and from his back, that he couldn't walk.  (ECF No. 1 at 9.)  Plaintiff alleges that he

18  was examined by a nurse who attempted to have defendant Dr. Ma see plaintiff on an emergency

19  basis, but Dr. Ma allegedly refused.  (Id.)  The nurse put plaintiff on the doctor's list for

20  September 21, 2009.  Although plaintiff was placed on the September 21, 2009 doctor's line,

21  plaintiff claims he was unable to walk to medical clinic because he had a fever, diarrhea, and was

22  blacking out.  Plaintiff alleges that defendant Dr. Ma would not send a wheelchair, so the nurse

23  came to plaintiff's cell, and after examining plaintiff, informed Dr. Ma that plaintiff needed a

24  doctor.  Plaintiff alleges that building officer Johnson told Dr. Ma that "he's tired of his shit," got

25  a gurney, put plaintiff on the gurney, and saw to it that plaintiff was out of the prison and en route

26  to U.C. Davis Medical Center.  Plaintiff alleges that defendant Dr. Ma subjected plaintiff to

27  unnecessary pain and suffering and reckless endangerment of his life in violation of the Eighth

28  Amendment.  (ECF No. 1 at 10.)

1    Plaintiff provided medical records reflecting that on September 20, 2009, plaintiff was

2    seen by a medical professional at 1850 (6:50 p.m.). (ECF No. 1 at 58.)  Plaintiff was complaining

3    that his left foot was swollen, red and painful" and that swelling began today in both feet.  (Id.)

4    Plaintiff had bilateral foot pain and it was difficult to bear weight on his left foot.  Plaintiff had

5    been lying with his feet elevated.  Upon examination, bilateral pedal and pre-tibial edema was

6    greater in the left than the right; edema was non-pitting; left foot had swelling to dorsal aspect of

7    foot, including ankle area.  Plaintiff's skin was slightly flushed, but not warm to touch.  The

8    medical professional assessed "sudden onset feet swelling etiology unknown.  Doubt cellulitis but

9    will place on MO line[1] in a.m." (ECF No. 1 at 58.)  Plaintiff was advised to keep his legs

10   elevated and present to MO line on September 21, 2009.  (Id.)

11   Plaintiff provided Dr. Ma's medical note indicating that plaintiff was examined by Dr. Ma

12   at 9:00 a.m. on September 21, 2009, noting "bilateral leg swelling, unclear etiology, rule out

13   bilateral DVT" (Deep Vein Thrombosis), and noting Code I/state vehicle for STAT ultrasound

14   Dopler exam. (ECF No. 1 at 62.)  This progress note is handwritten and signed by Dr. Ma.  (Id.)

15   In addition, on September 21, 2009, Dr. Ma completed a request for authorization of temporary

16   removal for medical treatment for plaintiff to be transported to U.C. Davis, and a physician's

17   order for a state vehicle to outside facility for STAT Dopler ultrasound (rule out bilateral DVT

18   [Deep Vein Thrombosis]), and to return in three days for follow-up. (ECF No. 1 at 60.)  The

19   physician's order is marked "OT" and "noted A. Harvell 9/21/09 @ 0930." (Id.)

20              ii.  October 21-23, 2009

21   Plaintiff alleges that he did not get better after being returned to prison; in fact, he was

22   getting worse. (ECF No. 1 at 10.)  On October 21, 2009, plaintiff claims he was unable to walk

23   over to pick up his medications because his legs and feet were swollen.  After plaintiff's cellmate

24   was unable to pick up plaintiff's medications, a nurse checked on him.  Plaintiff alleges that the

25   nurse and building officer Garcia told Dr. Ma that plaintiff needed to be seen.  "Again defendant

26   stated, no wheelchair." (ECF No. 1 at 10.)  Plaintiff claims that on October 23, 2009, defendant

27   ─────────────────
     [1] "MO line" refers to the Medical Officer's Line.  Galik v. Nangalama, 2012 WL 3756314, *8
28   (E.D. Cal. Aug. 28, 2012).

1    Dr. Ma stated that if plaintiff "can't walk over here, then too bad," citing Exhibit F.  (ECF No. 1

2    at 10:10-11; 27-28.)

3        Exhibit F is a medical record from Dr. Ma dated October 23, 2009.  The record states that

4    plaintiff was scheduled to be seen in the "MO line, but refused to come because 'feet pain unable

5    to walk.'"  (ECF No. 1 at 64.)  Dr. Ma noted that he evaluated plaintiff on September 30, 2009,

6    when he found plaintiff had "bilateral ankle leg/feet pain with mild conjunctivitis and diarrhea."

7    (Id.)  Dr. Ma recounted the five lab tests he ordered on September 30, 2009, and then reviewed

8    the lab results from those tests.  Dr. Ma also noted that there was no report from plaintiff's x-ray

9    at Mercy Folsom had been received, and he called Mercy Folsom.  (ECF No. 1 at 64.)  Dr. Ma set

10   forth the following plan:  lab results showed no acute and drastic medical condition; unclear why

11   plaintiff still has such pain in feet.  Plaintiff is still on Tylenol #3, and will reschedule plaintiff to

12   be seen next week.  (ECF No. 1 at 64.)

13            iii.   Standards for Eighth Amendment Claims

14       The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

15   prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Estelle v.

16   Gamble, 429 U.S. 97, 105-06 (1976).  In order to prevail on a claim of cruel and unusual

17   punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious

18   deprivation and that subjectively prison officials acted with deliberate indifference in allowing or

19   causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

20       Where a prisoner's Eighth Amendment claims arise in the context of medical care, the

21   prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

22   indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical

23   claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the

24   defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991),

25   overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en

26   banc).

27       A medical need is serious "if the failure to treat the prisoner's condition could result in

28   further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

1  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

2  "the presence of a medical condition that significantly affects an individual's daily activities."  Id.

3  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

4  objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

5  825, 834 (1994).

6         If a prisoner establishes the existence of a serious medical need, he must then show that

7  prison officials responded to the serious medical need with deliberate indifference.  Farmer, 511

8  U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay,

9  or intentionally interfere with medical treatment, or may be shown by the way in which prison

10  officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.

11  1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to

12  medical care, however, "the indifference to his medical needs must be substantial.  Mere

13  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

14  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

15  105-06).  Deliberate indifference is "a state of mind more blameworthy than negligence" and

16  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511

17  U.S. at 835 (quoting Whitley, 475 U .S. at 319).

18         Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

19  at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

20  plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

21  Cir. 1994); McGuckin, 974 F.2d at 1059.  "A prisoner need not show his harm was substantial;

22  however, such would provide additional support for the inmate's claim that the defendant was

23  deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

24         Finally, mere differences of opinion between a prisoner and prison medical staff as to

25  proper medical care do not give rise to a § 1983 claim.  Toguchi v. Chung, 391 F.3d 1051, 1058

26  (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)); Sanchez v. Vild,

27  891 F.2d 240, 242 (9th Cir. 1989).

28  ////

1        iv. <u>Analysis</u>

2        Plaintiff's allegations concerning his treatment in September of 2009, fail to state a claim

3    of deliberate indifference.  Medical records reflect that plaintiff's feet began swelling on

4    September 20, 2009, and he was seen by a medical professional at 1850 (6:50 p.m.) on September

5    20, 2009, and placed on MO line for September 21, 2009.  At 0900 (9:00 a.m.), on September 21,

6    2009, plaintiff was examined and evaluated by Dr. Ma, who diagnosed plaintiff with bilateral leg

7    swelling of unclear etiology, and ordered plaintiff to receive a STAT ultrasound Dopler exam to

8    rule out DVT.  (ECF No. 1 at 62.)  "STAT" is the abbreviation for the Latin word "statim,"

9    meaning "at once," or "immediately."  Stedman's Medical Dictionary1829 (28th ed. 2006).

10   Plaintiff was transported for the exam without further delay.  In addition, Dr. Ma issued an order

11   for plaintiff to return to clinic within three days.  (ECF No. 1 at 60.)  Such medical treatment,

12   even taking as true plaintiff's allegations as to what Dr. Ma may have verbalized, cannot be

13   viewed as deliberate indifference.  Plaintiff did not identify the harm, if any, he sustained from

14   the delay between 6:50 p.m. on September 20, 2009, and 9:00 a.m. on September 21, 2009.

15   Plaintiff does not indicate whether or not he was ultimately diagnosed with DVT, or what

16   diagnosis the outside professional provided.  Therefore, plaintiff's allegations pertaining to his

17   medical care in September of 2009, without more, fail to state a cognizable claim.

18       Similarly, plaintiff's allegations concerning the events of October 23, 2009, without more,

19   fail to rise to the level of deliberate indifference.  Although plaintiff did not present at the MO

20   line on October 23, 2009, that same day Dr. Ma reviewed plaintiff's medical records, and noted

21   that Dr. Ma had evaluated plaintiff on September 30, 2009, and ordered numerous tests.  (ECF

22   No. 1 at 64.)  Dr. Ma called Mercy Folsom to follow up on plaintiff's x-ray.  Dr. Ma reviewed

23   plaintiff's lab results, finding no acute medical reason explaining plaintiff's feet pain, noted that

24   plaintiff was still prescribed Tylenol #3, and rescheduled plaintiff to be seen the following week.

25   (ECF No. 1 at 64.)  Such medical records demonstrate that Dr. Ma was not deliberately

26   indifferent to plaintiff's medical needs.  Arguably, Dr. Ma did not provide plaintiff with the

27   medical care plaintiff wanted.  However, a difference of opinion as to medical treatment does not

28   constitute deliberate indifference.

B. <u>42 Day Delay</u>

Without referencing specific dates, plaintiff also alleges that defendants Dr. Ma and Dr. Hamkar were consistently deliberately indifferent to plaintiff's serious medical needs. (ECF No. 1 at 9, 11.) Plaintiff claims that he would put in a medical sick call slip to see the doctor for his swollen legs and feet and his debilitating back pain, and each time plaintiff would have to deal with Dr. Ma's and Dr. Hamkar's failure to see or treat plaintiff. Plaintiff claims he was forced to sit in his cell for 42 days with his debilitating back, leg and feet pain because neither Dr. Ma or Dr. Hamkar would see plaintiff. (ECF No. 1 at 11.) Plaintiff claims he had to file a grievance to obtain a cane because defendant Dr. Ma would not issue plaintiff a cane, stating "I know you must be in pain but I'm not going to issue you a cane because custody doesn't like us stepping on their toes by issuing them to inmates." (ECF No. 1 at 11.) Plaintiff claims defendants Ma and Hamkar violated plaintiff's Eighth Amendment rights. (ECF No. 1 at 11, 21.)

Plaintiff's allegations as to an unidentified 42 day delay are too vague and conclusory for the court to determine whether plaintiff can state a cognizable civil rights claim. Plaintiff fails to include any specific factual allegations as to Dr. Hamkar. Moreover, plaintiff's specific factual allegations as to Dr. Ma's treatment in September and October are refuted by the medical records provided by plaintiff. Inasmuch as plaintiff's swelling began on September 20, 2009, and Dr. Ma was awaiting test results, it appears that Dr. Ma was still in the process of trying to determine what was causing plaintiff's swelling and pain. Therefore, at most, plaintiff's specific factual allegations as to Dr. Ma constitute a difference of opinion and fail to rise to the level of a constitutional violation.

C. <u>The "Past Seven Months"</u>

Plaintiff alleges that for the "past seven months" he has been practically bedridden due to the pain from his back and his legs and feet. (ECF No. 1 at 14.) Plaintiff claims that for the past seven months he has visited defendants Dr. Wedell and Dr. Duc, who consistently ignored plaintiff's claims of pain and need for medical care and attention. (ECF No. 1 at 14.) Plaintiff alleges that both defendants treat plaintiff with "obvious agitation," as if "they don't want to be bothered," and that Dr. Wedell has told plaintiff that there is nothing they can do for him so stop

10

1  putting in these medical requests.  (ECF No. 1 at 14.)  Plaintiff states that he has asked both

2  defendants to refer plaintiff to a back specialist, but both doctors told plaintiff that prison officials

3  don't want us stepping on their toes by spending unnecessary money.  (ECF No. 1 at 15.)

4  Plaintiff claims that he is in the type of pain that affects his everyday living, almost 24 hours a

5  day.  Plaintiff alleges that defendants Wedell and Duc have "resorted to placing plaintiff on the

6  list to come be seen by them and then tell plaintiff 'Oh, we don't have your medical file, so

7  there's nothing we can do for you.'"  (ECF No. 1 at 15.)  Plaintiff states this has happened the last

8  three times, the last being on August 24, 2010.  (Id.)  Plaintiff claims defendants failed to order

9  his medical files for medical appointments.

10      Plaintiff also alleges that he appended two of nearly twenty requests to see the doctor, as

11  well as two of many grievances filed against defendants, referencing his Exhibits H and I.  (ECF

12  No. 1 at 15.)  However, Exhibit H is one request for health care services dated March 24, 2010.

13  (ECF No. 69.)  In this request, plaintiff states that pain medications are not helping, and that he is

14  suffering extreme pain in his ankles, feet and toes and needs to see a doctor as soon as possible.

15  (Id.)  The triage nurse noted that plaintiff was "already seen 3/25/10 on MO line."  (Id.)

16      In Exhibit I, plaintiff provided a copy of one appeal, No. SAC-10-10-10915, signed April

17  1, 2010, in which plaintiff sought medication for pain in his back, legs and feet.  (ECF No. 1 at

18  73.)  Plaintiff stated that he had written two prior inmate appeals (December 19 and March 10),

19  but had not heard back on either.  Plaintiff claimed he was in pain all the time.  (ECF No. 1 at 73.)

20      In the first level appeal response, defendant Dr. Wedell noted that he met with plaintiff on

21  May 13, 2010, and that based upon clinical evaluation, plaintiff was sent to San Joaquin General

22  Hospital for evaluation and treatment.  (ECF No. 1 at 71.)  Dr. Wedell noted that plaintiff

23  previously filed appeals on December 11, 2009, March 3, 2010, and April 3, 2010.  (ECF No. 1 at

24  71.)  In the appeal response, Dr. Wedell stated that plaintiff was "encouraged to use the sick call

25  system and communicate with the medical staff via the normal procedures."  (ECF No. 1 at 72.)

26          i.  Analysis

27      Plaintiff fails to identify the specific seven month period in which he claims defendants

28  Duc and Wedell were responsible for plaintiff's medical treatment.  In Appeal No. 10-10915,

1    plaintiff claimed he had been asking for help for some months now.  (ECF No. 1 at 73.)  His

2    medical request form is dated March 24, 2010, and the appeal addressed by Dr. Wedell on April

3    3, 2010, noted appeals from December 11, 2009 and March 3, 2010.  But the appeal also

4    referenced plaintiff's March 27, 2010 claim addressed below, and the instant complaint was

5    signed in early 2012.  Thus, the court cannot determine whether plaintiff meant the seven months

6    prior to the signing of the instant complaint, or whether plaintiff meant some seven month period

7    that included the March 2010 and April 2010 dates referenced in the exhibits.  Such dates are

8    relevant because the medical records provided by plaintiff reflects that plaintiff was prescribed

9    Tylenol #3 on October 23, 2009, and 30 mg. of Toradol on March 27, 2010.

10        Moreover, the documents provided by plaintiff reflect that he was "already seen" on

11    March 25, 2010 (ECF No. 1 at 69), and that Dr. Wedell met with plaintiff on May 13, 2010, and

12    that "based upon clinical evaluation, [plaintiff was] sent to San Joaquin General Hospital for

13    evaluation and treatment" (ECF No. 1 at 71).  Such documents, standing alone, do not evidence

14    deliberate indifference.  Plaintiff's general allegations do not explain whether the March 25, 2010

15    appointment was one of the visits in which the doctor did not have benefit of plaintiff's medical

16    records.

17        In addition, it is unclear whether plaintiff is alleging that he was deprived of all pain

18    medication, or whether he claims the pain medications provided were insufficient.  If plaintiff

19    was deprived of all pain medications for a seven month period of time, plaintiff may be able to

20    state a cognizable civil rights claim if he can allege facts demonstrating that each named

21    defendant was aware that plaintiff was in pain yet was deliberately indifferent to such pain and

22    failed to prescribe medication.  But if plaintiff contends the prescription provided for pain

23    medication was insufficient, plaintiff must provide additional factual allegations to demonstrate

24    defendants Wedell and Duc were deliberately indifferent to plaintiff's medical treatment for pain.

25    Indeed, a difference of opinion between plaintiff and his doctor as to which medications are

26    appropriate for his conditions, is not sufficient to support a claim of deliberate indifference.  See

27    Womack v. Bakewell, 2013 WL 3148467 at *9 (E.D. Cal. June 19, 2013) ("In this regard,

28    plaintiff's disagreement with defendants about the type and strength of his pain medication does

1   not reflect a conscious disregard of plaintiff's serious medical needs.  In short, based on the record

2   before the court, defendants' refusal to provide plaintiff with the pain medication he preferred did

3   not rise to the level of deliberate indifference in violation of the Eighth Amendment."); Jackson v.

4   Multnomah County, 2013 WL 428456 at *4 (D. Or. Feb.4, 2013) (providing Tylenol instead of

5   narcotic pain medication is not a basis for an Eighth Amendment claim); Parlin v. Sodhi, 2012

6   WL 5411710 (C.D. Cal. Aug. 8, 2012) ("At its core, plaintiff's claim is that he did not receive the

7   type of treatment and pain medication that he wanted when he wanted it.  His preference for

8   stronger medication -- Vicodin, Tramadol, etc. -- represents precisely the type of difference in

9   medical opinion between a lay prisoner and medical personnel that is insufficient to establish a

10  constitutional violation"); Salvatierra v. Connolly, 2010 WL 5480756 at *20 (S.D. N.Y. Sept.1,

11  2010) (providing ibuprofen instead of Percocet does not deprive an inmate of one of life's

12  necessities); Fields v. Roberts, 2010 WL 1407679 at *4 (E.D. Cal. April 7, 2010) (refusing to

13  prescribe narcotic pain medication even when an outside doctor recommended it is a difference in

14  medical opinion on the proper course of treatment and is not a basis for an Eighth Amendment

15  claim).

16      For all of the above reasons, plaintiff's claims against defendants Dr. Duc and Dr. Wedell

17  are too vague and conclusory to state a cognizable civil rights claim, but plaintiff is granted leave

18  to amend.

19      D. March 26, 2010

20      On March 26, 2010, plaintiff was walking to his cell and his back spasmed, causing

21  plaintiff to hit the floor hard on one knee.  (ECF No. 1 at 18.)  Plaintiff claims he suffered

22  unimaginable pain, and then the left side of his back locked, preventing him from straightening it

23  on the left side.  Plaintiff alleges that defendants Barbour and Yang let plaintiff stay in his cell, in

24  pain, for more than an hour and a half.  After this delay, defendants Barbour and Yang returned

25  and "dragged plaintiff out of the cell by his arms," then picked him up by his arms and placed

26  him in a wheelchair.  (ECV No. 1 at 18.)  Plaintiff contends these acts were deliberately

27  indifferent to plaintiff's back problem and pain, and plaintiff states that he "was in so much pain,

28  [he] couldn't feel his legs."  (Id.)

1    Plaintiff provided a copy of a triage and treatment flow sheet dated March 26, 2010,

2  which references his time in at 1800 and time out as 1820.  (ECF No. 1 at 95.)  Plaintiff

3  complained of knee pain, and the incident time was marked as 1430.  (Id.)  However, the progress

4  notes state that at 1735 the "writer" Calbaugh[2] was asked by an officer in building 4 to see

5  plaintiff who had fallen earlier.  (ECF No. 1 at 96.)  The "writer" noted that plaintiff:

6          had his head in his hands and was refusing to speak or answer
           questions.  Then [plaintiff] was screaming at C/O [Correctional
7          Officer] demanding to be let out of cell and taken to the TTA.
           [Plaintiff] still refused to answer any assessment questions.  Writer
8          asked C/O to bring [plaintiff] to the BTTA for further assessment.

9  (ECF No. 1 at 96.)

10    During the subsequent assessment, plaintiff stated:

11         I have neuropathy, and my knee goes out on me.  I want this
           documented that I am falling.  This is the third time in a month.
12         I'm only 43 and my legs swell up and I can't walk.  Something is
           wrong and they can't figure out what.  I saw Dr. Duc yesterday and
13         he didn't do anything for me.  I went to UCD in September and
           they did an ultrasound, x-rays and blood tests.   I can't take
14         Neurontin, I'm up all night with stomach pains.

15  (ECF No. 1 at 96.)  The March 26, 2010 physician's order authorized plaintiff to have ice for his

16  left knee as needed and to be placed on MO line Monday morning.  (ECF No. 1 at 94.)  This

17  order was timed 1815.  (Id.)  Plaintiff was returned to his cell via wheelchair.

18    i. Analysis

19    Plaintiff's allegations as to the events of March 26, 2010, without more, fail to rise to the

20  level of a civil rights violation.  Taking plaintiff's allegations as to the delay as true, plaintiff did

21  not receive medical care for his injured knee for more than an hour and a half.  The triage and

22  treatment form provided by plaintiff reflects that plaintiff was injured on or about 2:30 p.m.

23  (1430), but was not seen by medical until 6:00 p.m. (1800).  However, plaintiff fails to allege how

24  such delay was harmful.  Jett, 439 F.3d at 1096.  Indeed, aside from the physical assessment,

25  plaintiff was written an order to have ice in his cell to apply to his left knee, and placed on the

26

27  [2]  It is unclear what Calbaugh's title is, but it appears Calbaugh was in charge of plaintiff's triage,
    completed the triage and treatment flow sheet, and took plaintiff's vital signs, and referred to his
28  or herself as "writer" in the progress notes.  (ECF No. 1 at 96.)

14

next business day's MO line.  It does not appear that plaintiff was prescribed pain medication.  In order to state a cognizable Eighth Amendment violation, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  Berry, 39 F.3d at 1057.  Thus, the court cannot find that plaintiff's claim that the delay in medical treatment on March 26, 2010, without more, states a cognizable civil rights claim.

E. March 27, 2010

On March 27, 2010, upon completion of his shower, plaintiff was handcuffed behind his back through a small port in the door by defendants Higgins and Barbour, even though it is well-documented that plaintiff has a deteriorated disc problem in his back.  (ECF No. 1 at 16.)  Plaintiff suffered a "very painful back spasm" and "doubled over onto the filthy shower door."  (Id.)  Plaintiff told defendants Barbour and Yang that plaintiff's back had spasmed and given out, and asked them to call medical.  Plaintiff claims defendants Higgins, Barbour, and Yang "just stood there watching plaintiff on the floor of the filthy shower, in pain, handcuffed behind his back."  (Id.)  Plaintiff alleges defendant Barbour stated that plaintiff would "have to wait until after count, and we're done feeding dinner."  (Id.)  Plaintiff asked defendant Barbour to call his sergeant.  Plaintiff alleges that defendant Barbour left, and when he returned, he had an ADA chair.  Defendant Barbour told plaintiff "we're gonna have to close the shower door," then defendants Barbour and Higgins pushed plaintiff up against the ADA chair and, leaving plaintiff handcuffed and lying on the shower floor, locked plaintiff into the shower.  (ECF No. 1 at 17.)  At some point, defendant McGee, R.N., was called, but allegedly refused to come down.  But when McGee finally did come down, plaintiff alleges McGee would not come to the shower.  Plaintiff does not indicate who called defendant McGee.  Plaintiff claims he was left in the shower for two and a half hours in unbearable pain.  When defendants Barbour and Higgins returned, they put plaintiff "hanging sideways on a gurney and carried him from the shower to the A-section dayroom."  (ECF No. 1 at 17.)  Plaintiff claims his pain was unbearable, and "possibly added to plaintiff's back problem."  (Id.)  Plaintiff alleges that the actions and omissions of defendants Barbour, Higgins, and McGee subjected plaintiff to cruel and unusual punishment, and constitute deliberate indifference to plaintiff's serious medical needs.

1    Plaintiff provided a copy of a physician's order dated March 27, 2010, at 1830, ordering

2    30 mg of Toradol for plaintiff's leg pain, which was administered at 1845.  (ECF No. 1 at 90.)

3        i. Analysis

4    Plaintiff states a potentially cognizable Eighth Amendment claim against defendants

5    Higgins, Barbour and Yang.  But plaintiff's claim against defendant McGee appears to be based

6    on the delayed medical treatment.  Plaintiff may be able to state a cognizable claim against

7    defendant McGee if plaintiff can allege facts demonstrating that defendant McGee was aware that

8    plaintiff was in "unbearable pain" due to a recent fall yet refused to come assess plaintiff's

9    condition.[3]  However, it appears that plaintiff failed to first exhaust his administrative remedies

10   with regard to defendant McGee.

11   Exhaustion in prisoner cases covered by 42 U.S.C. § 1997e(a) is mandatory.  Porter v.

12   Nussle, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding

13   conditions of confinement, whether they involve general circumstances or particular episodes,

14   and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

15   Plaintiff provided copies of his administrative appeal No. SAC-S-10-00512.  In this

16   appeal, plaintiff does not claim that the nurse refused to come treat plaintiff.  (ECF No. 1 at 78.)

17   Rather, plaintiff claims that the nurse was not notified until 1730.  (ECF No. 1 at 78, 80.)

18   Plaintiff asked that all correctional officers "be held accountable."  (ECF No. 1 at 80.)  There is

19   no other reference to a nurse in plaintiff's administrative appeal.  Although plaintiff is not

20   required to specifically name defendants in his administrative appeals, Jones v. Bock, 549 U.S.

21

22   [3]  During the administrative appeal process, the second level reviewer interviewed defendants.
     Defendant Barbour "indicated that on March 27, 2010, [plaintiff] [was] observed sitting in the

23   shower and stated that [plaintiff] could not move.  Officer Barbour confirmed that Medical was
     contacted and the officers were instructed to bring [plaintiff] up to Medical after count cleared

24   based on [plaintiff's] issue was not deemed a medical emergency and [plaintiff] was seen by
     Medical the previous day for the same issue."  (ECF No. 1 at 87.)  Defendant Higgins "indicated

25   that he vaguely recalls the incident but remembers that [plaintiff] [was] given a medical chair to
     sit in while [plaintiff] [was] in the shower and [plaintiff] [was] not in the shower for a long period

26   of time prior to being taken up to Medical."  (ECF No. 1 at 87.)  If the officer who called
     defendant McGee did not describe plaintiff's condition as emergent, defendant McGee could not

27   have been aware that plaintiff was in unbearable pain, and thus could not be deliberately
     indifferent to plaintiff's medical needs.

28

1   199, 217 (2007), he is required to allege sufficient facts to put prison officials on notice of such

2   claims.  "A grievance suffices if it alerts the prison to the nature of the wrong for which redress is

3   sought."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  Here, plaintiff failed to allege

4   facts attributable to defendant McGee in his administrative appeals; rather, his administrative

5   appeals focused specifically on the alleged actions and inactions of the correctional officer

6   defendants.  Thus, administrative appeal No. SAC-S-10-00512 fails to demonstrate that plaintiff

7   exhausted his administrative remedies as to defendant McGee.  Plaintiff's claim against defendant

8   McGee is dismissed without prejudice.

9                     ii.  Conclusion

10          In conclusion, as to the March 27, 2010 allegations, plaintiff states a potentially

11   cognizable Eighth Amendment claim against defendants Higgins, Barbour and Yang, but

12   plaintiff's claim against defendant McGee is dismissed without prejudice.

13          F.  April 28, 2010

14          On April 28, 2010, plaintiff alleges that plaintiff was unable to stand against a wall for

15   twenty minutes while waiting to see medical personnel.  (ECF No. 1 at 12.)  Plaintiff's leg began

16   shaking, and he asked defendant Culverson for a chair.  Defendant Culverson became very angry,

17   pushed plaintiff toward a holding cage, opened the door, and then pushed plaintiff into the cage

18   so hard that plaintiff's back slammed against the table.  (ECF No. 1 at 9, 12.)  Defendants

19   Culverson and Whitehead grabbed plaintiff's cane and pulled plaintiff up so hard and fast that

20   plaintiff slammed into the cage door, breaking plaintiff's cane in two and cutting plaintiff's hand

21   and wrist.  Plaintiff fell to the floor, still handcuffed.  Plaintiff appears to claim that defendant

22   Culverson told plaintiff, "[m]y boss, Captain Leiber, told us about all this (ADA) shit you're

23   filing about."  (ECF No. 1 at 12.)  At this point, defendant R.N. Mangum came out, and began to

24   document plaintiff's injuries.  Plaintiff claims that defendant custody sergeant Mays told

25   defendant Mangum to "just put on there that plaintiff was being disruptive, nothing else."  (ECF

26   No. 1 at 12.)  Plaintiff alleges defendant Mangum abruptly stopped talking to plaintiff, stopped

27   documenting plaintiff's injuries, and left.  Plaintiff remained on the floor of the holding cage, still

28   handcuffed and bleeding, and could not get up.  Plaintiff asked for medical care but was refused.

(ECF No. 1 at 13.)  Plaintiff alleges that defendants Culverson and Whitehead used excessive force against plaintiff while he was in handcuffs, in retaliation for plaintiff's constitutional right to pursue his rights to file claims under the Americans with Disabilities Act ("ADA"), in violation of plaintiff's First, Eighth, and Fourteenth Amendment rights.  (ECF No. 1 at 19.)  Plaintiff contends that defendant Mays did not report the use of excessive force, and interfered with plaintiff's medical care and treatment.  (ECF No. 1 at 19.)[4]  Plaintiff claims that defendant Mangum was deliberately indifferent to plaintiff's serious medical needs.  Plaintiff alleges that each of these defendants subjected plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff also claims that defendants Mays and Leiber refused to document or punish the unnecessary and excessive use of force by their subordinates, defendants Culverson and Whitehead, in violation of plaintiff's due process and equal protection rights.  (ECF No. 1 a 21.)

                    i.  First, Eighth & Fourteenth Amendments:  Use of Force and Retaliation

        Plaintiff's complaint states potentially cognizable First and Eighth Amendment claims against defendants Culverson and Whitehead based on plaintiff's claim that no force was necessary and that defendants used excessive force against him in retaliation for filing appeals concerning his rights under the ADA.  (ECF No. 1 at 12, 19, 43.)

        Plaintiff's claim that defendants Culverson and Whitehead violated plaintiff's Fourteenth Amendment rights is subsumed by his alleged First and Eighth Amendment violations.  Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide in analyzing a plaintiff's claim.  Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (quotation marks, internal quotation marks and internal brackets omitted).  Here, because

_____

[4]  In the relief portion of the complaint, plaintiff claims that defendant Mays violated plaintiff's First Amendment rights stating "(retaliation for litigation) under respondeat superior/ supervisor liability."  (ECF No. 20.)  Plaintiff includes no facts supporting a retaliation claim against defendant Mays.  Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior.

1  the gravamen of plaintiff's complaint regarding defendants Culverson and Whitehead is that they

2  used excessive force in retaliation against plaintiff for the exercise of his First Amendment rights,

3  such claims are more properly analyzed under the First and Eighth Amendments.  Thus,

4  plaintiff's Fourteenth Amendment substantive due process claim is dismissed without leave to

5  amend.

6            ii.  Eighth Amendment:  Deliberate Indifference to Serious Medical Needs

7        After defendant Mays issued defendant Mangum an order, plaintiff alleges defendant

8  Mangum abruptly stopped talking to plaintiff, stopped documenting plaintiff's injuries, and left.

9  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v.

10 McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Thus, plaintiff states a potentially cognizable

11 claim against defendant Mays, for interfering with plaintiff's medical treatment, and defendant

12 Mangum for failing to render medical attention.

13           iii.  Due Process and Equal Protection

14       Plaintiff also alleges violations of his due process and equal protection rights by

15 defendants Mays and Leiber by allegedly refusing to document or punish the unnecessary and

16 excessive use of force by their subordinates, defendants Culverson and Whitehead.  However,

17 plaintiff's allegations fail to state cognizable claims.

18       The Due Process Clause protects against the deprivation of liberty without due process of

19 law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  In order to invoke the protection of the Due

20 Process Clause, a plaintiff must first establish the existence of a liberty interest for which the

21 protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from

22 state law.  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in

23 avoiding "more adverse conditions of confinement."  Id.  Under state law, the existence of a

24 liberty interest created by prison regulations is determined by focusing on the nature of the

25 deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests created by state

26 law are "generally limited to freedom from restraint which . . . imposes atypical and significant

27 hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484; Myron v.

28 Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

1    The Ninth Circuit has not found that prisoners have an independent right, grounded in the

2    Due Process Clause, to an accurate prison record.  Hernandez v. Johnston, 833 F.2d 1316, 1319

3    (9th Cir. 1987).  In this instance, although plaintiff alleges defendants Mays and Leiber failed to

4    document or report the incident of excessive force, plaintiff has not established that he was

5    deprived of any protected liberty interest as a result.  Therefore, plaintiff's due process claim

6    arising from the failure to document or report the incident is not cognizable.[5]

7    The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall .

8    . . deny to any person within its jurisdiction the equal protection of the laws."  To state a claim for

9    discrimination under the Equal Protection Clause, a plaintiff must allege that a defendant acted

10   with an intent or purpose to discriminate against the plaintiff based upon his membership in a

11   protected class.  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  A plaintiff

12   alleging denial of equal protection under 42 U.S.C. § 1983 must plead intentional unlawful

13   discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.

14   Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998).

15   Alternatively, a plaintiff who is not a member of a protected class, may assert an equal protection

16   claim as a "class of one" if he alleges that he has been intentionally treated differently from others

17   similarly situated and that there is no rational basis or compelling need for the difference in

18   treatment.  SeaRiver Maritime Financial Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.

19   1996).  The complaint in this case fails to state a claim against any defendant under either equal

20   protection theory.

21   Therefore, plaintiff's due process and equal protection claims against defendants Mays

22   and Leiber are dismissed without leave to amend.

23   ////

24   ////

25   

26   [5]  Plaintiff does not have a constitutional right to the preparation of an incident report concerning
     the use of force, and the court is not aware of a federal law requiring such preparation.

27   Manzanillo v. Jacquez, 2012 WL 4113550 at *7 (N.D. Cal. Sept. 18, 2012) ("no federal
     constitutional right or other federal law cited by Plaintiff or known to the Court requires prison

28   officials to report or investigate the use of force.").

1       G. <u>State Law Claims</u>

2       In his fourth claim for relief, plaintiff alleges various state law claims.  Although the court

3 may exercise supplemental jurisdiction over state law claims, plaintiff must first have a

4 cognizable claim for relief under federal law.  <u>See</u> 28 U.S.C. § 1367.  Moreover, if plaintiff

5 pursues state law claims, he must clearly identify each claim and demonstrate compliance with

6 the California Tort Claims Act.  Under the California Tort Claims Act ("CTCA"), a plaintiff may

7 not maintain an action for damages against a public employee unless he has presented a written

8 claim to the state Victim Compensation and Government Claims Board within six months of

9 accrual of the action.  <u>See</u> Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; <u>Mangold v.</u>

10 <u>California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995).  A plaintiff may file a written

11 application for leave to file a late claim up to one year after the cause of action accrues. Cal. Gov't

12 Code § 911.4.  The purpose of CTCA's presentation requirement is "to provide the public entity

13 sufficient information to enable it to adequately investigate claims and to settle them, if

14 appropriate, without the expense of litigation."  <u>City of San Jose v. Superior Court</u>, 12 Cal.3d

15 447, 115 Cal. Rptr. 797 (1974).  Thus, in pleading a state law claim, plaintiff must allege facts

16 demonstrating that he has complied with CTCA's presentation requirement.  <u>State of California v.</u>

17 <u>Superior Court (Bodde)</u>, 32 Cal.4th 1234, 13 Cal.Rptr.3d 534 (2004).  Failure to demonstrate

18 compliance constitutes a failure to state a cause of action and will result in the dismissal of

19 plaintiff's state law claims.  <u>Id.</u>

20       Because plaintiff's complaint is being dismissed with leave to amend, and plaintiff did not

21 plead his compliance with the CTCA, the court will not address the viability of plaintiff's

22 allegations supporting his state law claims.

23 V. <u>Leave to Amend</u>

24       As set forth above, plaintiff's Fourteenth Amendment substantive due process claims

25 against defendants Culverson and Whitehead are dismissed with prejudice, and plaintiff's due

26 process and equal protection rights claims against defendants Mays and Leiber are dismissed with

27 prejudice.  Plaintiff's remaining claims are dismissed without prejudice, and plaintiff is granted

28 leave to file an amended complaint that complies with this order.

1    If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

2    about which he complains resulted in a deprivation of plaintiff's constitutional rights.  Rizzo v.

3    Goode, 423 U.S. 362, 371 (1976).  Also, the complaint must allege in specific terms how each

4    named defendant is involved.  Id.  There can be no liability under 42 U.S.C. § 1983 unless there is

5    some affirmative link or connection between a defendant's actions and the claimed deprivation.

6    Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743

7    (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil

8    rights violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

9    In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

10   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

11   complaint be complete in itself without reference to any prior pleading.  This requirement exists

12   because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

13   Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

14   pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

15   original complaint, each claim and the involvement of each defendant must be sufficiently

16   alleged.  However, plaintiff need not submit exhibits to his amended complaint; the exhibits

17   provided with his original complaint remain on file and may be referenced by any party.

18   Plaintiff may not change the nature of this suit by adding new, unrelated claims in his

19   amended complaint.  George, 507 F.3d at 607 (no "buckshot" complaints).

20   Finally, plaintiff is cautioned that in his amended complaint he may only join multiple

21   claims if they are all against a single defendant, and the facts alleged share commonality and the

22   same transaction.  Fed. R. Civ. P. 18(a); Fed. R. Civ. P. 20(a)(2).  For example, plaintiff may not

23   re-allege his claims related to the events of March 27, 2010, in the same amended complaint as

24   those related to the events of April 28, 2010, because such allegations are based on unrelated

25   claims against different defendants.  Unrelated claims against different defendants must be

26   pursued in multiple lawsuits.  Thus, plaintiff must decide which claims, identified by the court as

27   cognizable, he will pursue in an amended complaint filed in this action, and which he will file in a

28   separate, newly-filed civil rights complaint.  As set forth above, failure to comply with this order

1   may result in the imposition of sanctions, including dismissal of some or all of plaintiff's claims.

2   VI.   Conclusion

3      In accordance with the above, IT IS HEREBY ORDERED that:

4      1.   Plaintiff's request for leave to proceed in forma pauperis is granted.

5      2.   Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

6   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

7   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

8   Director of the California Department of Corrections and Rehabilitation filed concurrently

9   herewith.

10      3.   Plaintiff's Fourteenth Amendment substantive due process claims against defendants

11   Culverson and Whitehead are dismissed with prejudice.

12      4.   Plaintiff's due process and equal protection claims against defendants Mays and Leiber

13   are dismissed with prejudice.

14      5.   Plaintiff's complaint is dismissed without prejudice.

15      6.   Within thirty days from the date of this order, plaintiff shall complete the attached

16   Notice of Amendment and submit the following documents to the court:

17        a.   The completed Notice of Amendment; and

18        b.   An original and one copy of the Amended Complaint.

19   Plaintiff's amended complaint shall comply with the instant order, the requirements of the Civil

20   Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended

21   complaint must also bear the docket number assigned to this case and must be labeled "Amended

22   Complaint."  Failure to file an amended complaint in accordance with this order will result in the

23   dismissal of this action.

24      7.   The Clerk of the Court is directed to send plaintiff two forms for filing a civil rights

25   complaint pursuant to 42 U.S.C. § 1983.

26   Dated:  June 30, 2014

27   KENDALL J. NEWMAN
         UNITED STATES MAGISTRATE JUDGE

28   /amas0388.14

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOE AMASON,                                 No.  2:12-cv-0388 KJN P

12                  Plaintiff,

13        v.                                      NOTICE OF AMENDMENT

14   J. WEDELL, et al.,

15                  Defendants.

16

17        Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19            _____       Amended Complaint

20   DATED:

21

22                                 _____
                                   Plaintiff

23

24

25

26

27

28